**Rocco P. DiGIOVANNI, Jr.,
Plaintiff, Appellant,**

v.

**TRAYLOR BROTHERS, INC.,
Defendant, Appellee.**

No. 94–1775.

United States Court of Appeals,
First Circuit.

Submitted Oct. 1, 1996.

Decided Oct. 10, 1996.

David B. Kaplan, Thomas M. Bond, The Kaplan/Bond Group, Boston, MA, Paul V. Gallogly, and Lovett, Schefrin, Gallogly & Harnett, Ltd., Providence, RI, on brief, for appellant.

Andrew Rothschild, Eric D. Paulsrud, and Lewis, Rice & Fingersh, L.C., St. Louis, MO, on brief, for appellee.

Myles W. McDonough and Sloane and Walsh, Boston, MA, on brief, for J.M. Cashman, Inc. and Cashman, KPA, A Joint Venture, amici curiae.

Before TORRUELLA, Chief Judge, SELYA, CYR, BOUDIN, STAHL and LYNCH, Circuit Judges.

PER CURIAM.

This appeal comes before the en banc court following the withdrawal of a two-to-one decision, issued on February 6, 1996, in which a panel of this court vacated a judgment of the United States District Court for the District of Rhode Island.[1] The en banc court similarly withdrew a decision handed down by a different panel that construed the same federal statute, namely, section 905(b) of the Longshore and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. §§ 901–950, in a materially different way. *See Morehead v. Atkinson–Kiewit, J/V*, 97 F.3d 603. We granted rehearing en banc in both cases so as to afford us an opportunity to formulate a consistent rule in this circuit concerning the underlying question of statutory construction.

This case illustrates the problem. The defendant, Traylor Bros., Inc. (Traylor), contracted with the State of Rhode Island to construct a new bridge spanning Narragansett Bay from North Kingstown to Jamestown. Once work began, Traylor chartered tugboats and nonmotorized barges to assist it in building coffer dams for the new bridge. It hired pile-driving crews, carpenters, mechanics, and crane operators to man the barges.

In mid–1988, Traylor towed the barge BETTY F, whose main deck was fitted with a crane and a vibratory pile-driving hammer, to the coffer dam construction site. Thereafter, Traylor moved the BETTY F to various other aquatic locations where it functioned as a stationary platform for the pile-driving crew. During most pile-driving operations, a supply barge, used to carry materials and to

house the powerpack for the pile driver, was moored alongside the BETTY F. Traylor routinely assigned two employees as "tag men" to stand on the supply barge's main deck, grasp opposing guide ropes attached to the vibratory hammer, and steady the implement as it moved into position over the metal piles that were to be driven.

Beginning in September of 1988, worn fittings on the powerpack began to leak hydraulic fluid which spilled onto the deck of the supply barge. Crewmen complained unsuccessfully to their superiors and to the union steward about the hazard. They also tried to alleviate the problem from time to time, but to no avail.

On September 30, 1988, plaintiff Rocco DiGiovanni, Jr., who had been assigned by Traylor to work as a tag man on the supply barge, slipped on spilled hydraulic fluid as he started across the oil-covered deck to steady the BETTY F's pile-driving hammer with his guide rope. DiGiovanni was seriously injured and received workers' compensation benefits from Traylor under LHWCA § 904, 33 U.S.C. § 904.

Not satisfied with the avails of workers' compensation, DiGiovanni sued in the federal district court. His complaint noted that Traylor was not only his employer but also the owner *pro hac vice* of both the BETTY F and the supply barge. Accordingly, he asseverated that Traylor was liable in negligence pursuant to 33 U.S.C. § 905(b) in its capacity as vessel owner.

The district court entered judgment for Traylor as a matter of law following a three-day bench trial. *See DiGiovanni v. Traylor Bros., Inc.*, 855 F.Supp. 37 (D.R.I.1994). As mentioned earlier, a panel of this court vacated the decision. The panel held that the lower court had applied too restrictive a test to DiGiovanni's "dual capacity" claim. It was against that backdrop that we granted en banc review.

The en banc court has now issued its opinion resolving the companion case.[2] *See*

---

1. The district court's opinion is published. *See DiGiovanni v. Traylor Bros., Inc.*, 855 F.Supp. 37 (D.R.I.1994).

2. The appeals in this case and in *Morehead* could not be treated in a single en banc opinion because a senior judge who had sat on the *Morehead* panel was eligible to participate in the en

*Morehead v. Atkinson–Kiewit, J/V,* 97 F.3d 603 (1st Cir.1996) (en banc). This opinion clarifies the proper interpretation of LHWCA § 905(b) in "dual capacity" cases. In the view of the majority of the judges of the en banc court, *Morehead* is controlling here. Moreover, *Morehead* explicates our reasoning in sufficient detail that added comment on our part would be supererogatory.

It suffices to say that we are not persuaded by the distinctions that our dissenting brother raises. As we see things, *Morehead,* as applied to the facts of the instant case, plainly requires that we depart from the position taken by the panel and reinstate the district court's entry of judgment in Traylor's favor. We need go no further.

***Affirmed.***

CYR, Circuit Judge (dissenting).

On the grounds set forth in *Morehead v. Atkinson–Kiewit, J/V,* 97 F.3d 603 (1st Cir. 1996) (Cyr, J., dissenting), I respectfully dissent. The district court entered judgment for Traylor Brothers, Inc. in reliance on decisional law which presumes a legal fiction of dual capacity that conflicts with both the LHWCA and the Supreme Court decision in *Scindia Steam Navigation Co. v. De Los Santos,* 451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981). For two principal reasons, reliance on the dual capacity fiction in the present case is less appropriate than in *Morehead.*

First, unlike *Morehead* the present record leaves no doubt that "active control" over the workplace where DiGiovanni was injured shifted so haphazardly between Traylor Brothers' two fictional personae that it cannot reliably be determined which cadre of its employees Traylor Brothers expected to control workplace safety at the site of the injury. *See Morehead,* 97 F.3d at 621 n. 6 (Cyr, J., dissenting). Indeed, the district court acknowledged that the failure to stop the powerpack leakage for nearly a month amounted to negligence, and it is more than merely arguable that the negligence which caused

banc decision in that case, but not in this case.

DiGiovanni's injury is directly attributable to the absence of any clear delineation of responsibility by Traylor Brothers for its workplace-safety decisions. Thus, on the present record Traylor Brothers did not approach an efficient "bifurcation" of its "vessel-owner" and "construction" operations.

Second, during the extended period the powerpack leakage persisted, Traylor Brothers' supervisors and employees resorted to a series of patently inadequate stopgap measures (e.g., tying the powerpack with rags, spreading kitty litter on the oil-slickened deck). Further, even assuming that an open hatch arguably might serve some legitimate vessel or construction purpose in a particular case, the faulty powerpack and its dangerous effluent not only represented an open and conspicuous hazard, but served no conceivable purpose which might warrant the extended failure of Traylor Brothers' fictional "vessel owner" persona to second-guess its alter ego's decision not to stop the leak sooner. Even if one accepts the dubious premise that Traylor Brothers might establish an affirmative "bifurcation" defense on remand, DiGiovanni certainly generated a factual dispute as to whether Traylor Brothers' "vessel owner" persona knew of the abortive stopgap remedies, and should have known that its alter ego's decision not to undertake further remediation was "obviously improvident." *Cf. Scindia,* 451 U.S. at 175, 178–79, 101 S.Ct. at 1626, 1627–28 (noting genuine factual dispute whether vessel owner was liable because it knew that stevedore's decision not to fix defective winch for two days was obviously improvident, and remanding for further factual findings). I therefore would remand the case to the district court for further factual findings.